**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JONATHAN L. JOHNSON,

       Plaintiff,

vs.                                              CASE NO. 8:11-cv-819-T-27TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

       Defendant.

_____

## <u>REPORT AND RECOMMENDATION</u>[1]

This case is before the Court on Plaintiff's complaint (Doc. #1). Plaintiff seeks review of the final decision of the Commissioner of Social Security denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has authority to conduct the requested review. 42 U.S.C. § 405(g).

Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #17). Defendant filed a brief in support of the decision denying disability benefits (Doc. #20). The Commissioner has filed the transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number). The parties did not consent to the exercise of jurisdiction by a magistrate judge, but the case has been referred to the undersigned for a report and recommendation.

The Court has reviewed the record and has given it due consideration in its entirety, including the arguments presented by the parties in their briefs and the materials provided

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

in the transcript of the underlying proceedings. Upon review of the record, the Court found that the issues raised by Plaintiff were fully briefed and concluded that oral argument would not benefit the Court in making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

## I. Procedural History

Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income in which he alleged an onset date of January 3, 2007, at age 48 (Tr. 157-71). Plaintiff's applications were denied initially and upon reconsideration (Tr. 90-95, 100-01, 103-04). Plaintiff requested an administrative hearing, which was held on December 2, 2009 in Tampa, Florida (Tr. 41-67). Administrative Law Judge ("ALJ") Michael S. Maram issued a decision denying Plaintiff's applications on January 26, 2010 (Tr. 20-35). Plaintiff filed a request for review, which the Appeals Council denied on February 10, 2011 (Tr. 1-5). Plaintiff filed the instant action in federal court on April 14, 2011 (Doc. #1).

## II. Summary of the ALJ's Decision

A plaintiff may be entitled to disability benefits under the Social Security Act if he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected either to result in death or last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). The Commissioner has established a five-step sequential evaluation process for determining

whether a plaintiff is disabled and therefore entitled to benefits.[2]  *See* 20 C.F.R. §§ 404.1520, 416.920[3]; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).

In the instant case, the ALJ found that Plaintiff met the Social Security Act's insured status requirements through December 31, 2011 (Tr. 25).  At step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 3, 2007, the beginning of the time period under consideration.  *Id.* At step two, the ALJ found that Plaintiff suffered from the severe impairments of "bereavement, cannabis abuse, ulnar nerve compression of his right wrist, and reported tendonitis in his left knee."  *Id.*  The ALJ considered Plaintiff's arthritis in his hands and hypertension but found that neither of those impairments was severe (Tr. 25-26).  At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 26-27).  At step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")

---

[2] First, if a claimant is engaging in substantial gainful activity, he is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments that significantly limits his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from performing his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(g). A plaintiff bears the burden of persuasion through step four, but the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).

[3] Unless otherwise specified, all references to 20 C.F.R. will be to the 2012 edition. As the regulations for SSI disability payments mirror those set forth for DIB on the matters presented in this case, from this point forward the Court may refer only to those sections in 20 C.F.R. pertaining to part 404 and disability insurance benefits.

to perform light work . . . which includes lifting or carrying up to 20 pounds occasionally and up to 10 pounds frequently, sitting for up to 6 hours in an 8-hour workday, and standing or walking for up to 6 hours in an 8-hour workday. However, [Plaintiff] must be able to alternate sitting and standing. Furthermore, [Plaintiff] is unable to perform work involving public contact or frequent contact with others and supervisors.

(Tr. 27). Considering this RFC, the ALJ found that Plaintiff was unable to perform his past relevant work as "a construction worker, a cook, a machine operator, and a social worker" (Tr. 33). At step five, the ALJ found that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, including small products assembler, electronics worker, and printed products assembler (Tr. 34). Therefore, the ALJ found that Plaintiff was not under a disability since January 3, 2007, the alleged onset date. *Id.*

### III. Standard of Review

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. *See also Richardson v. Perales*, 402 U.S. 389, 390 (1971).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence is defined as more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established . . . and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted).

Where the Commissioner's decision is supported by substantial evidence, the Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

4

even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence that is favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. Although the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the reviewing court must not re-weigh the evidence, but must determine whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

In all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability and is responsible for furnishing or identifying medical and other evidence regarding the claimed impairments. *Bowen*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). It is the plaintiff's burden to provide the relevant medical and other evidence establishing disabling physical or mental functional limitations. 20 C.F.R. § 404.704.

## IV. Summary of Plaintiff's Mental Health Records

Because Plaintiff focuses on his mental impairments in his appeal, the Court summarizes the relevant medical evidence. Plaintiff began receiving mental health treatment at Suncoast Center for Community Mental Health, Inc. ("Suncoast") on January 24, 2008. On that date, Plaintiff was assessed by Beverly Zaleski, a clinician (Tr. 358-61). Ms. Zaleski's assessment was reviewed by Dick Smith, a clinical mental health counselor (Tr. 352). Plaintiff reported feeling upset sometimes and wondered whether he had bipolar disorder (Tr. 358). Plaintiff had experienced many sad events in his life, including the killings of his teenage son and baby granddaughter. *Id.* However, Ms. Zaleski indicated that Plaintiff "said all these experiences have given him strength" (Tr. 359). Ms. Zaleski diagnosed Plaintiff with depressive disorder, not otherwise specified, and post-traumatic stress disorder (Tr. 360). Ms. Zaleski assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 55, indicating moderate symptoms or moderate difficulty in functioning. *Id.*; *see* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (score of 51-60 indicates moderate symptoms or difficulty).

Plaintiff then began treating with Masharia Clark, an advanced registered nurse practitioner at Suncoast, on February 21, 2008 (Tr. 341-44). Plaintiff complained of depression, paranoia, and difficulty sleeping and concentrating, but he "denie[d post-traumatic] stress disorder memories" (Tr. 341). Plaintiff admitted that "he has occasionally smoked marijuana in the past and . . . it calmed [him] down. He state[d] it has never been problematic" (Tr. 342). Ms. Clark diagnosed Plaintiff with "Bipolar disorder I, most recent episode mixed with psychotic features. Rule out major depressive disorder with paranoia

and psychotic features" (Tr. 343). Ms. Clark assigned a GAF score of 55 and prescribed mood stabilizers and an antidepressant. *Id.* On March 13, 2008, Plaintiff stated to Ms. Clark: "I'm better. . . . I'm thinking that I can go back to work and get a job again" (Tr. 340). Plaintiff reported sleeping well and having a positive focus and improved moods. *Id.* He denied using recreational drugs. *Id.* Ms. Clark assessed a slightly higher GAF score of 56. *Id.*

Dr. Linda Appenfeldt, a licensed psychologist, conducted a consultative examination of Plaintiff on March 19, 2008 (Tr. 310-13). Dr. Appenfeldt reported that Plaintiff was "still grieving" the losses of his son and granddaughter, which had occurred more than a decade beforehand, but Plaintiff's mood was euthymic and he displayed normal concentration, persistence, understanding, memory, and social interaction (Tr. 310). Plaintiff admitted that he used cannabis "once or twice, every two weeks" and that his last use was two weeks previously (Tr. 311). Plaintiff stated: "It mellows me out when I'm upset." *Id.* Plaintiff told Dr. Appenfeldt that his daily activities included doing laundry, preparing meals, shopping for groceries, and reading the Bible (Tr. 312). Plaintiff stated that he "used to be a more social person," wanted to isolate himself, and had outbursts with family and coworkers. *Id.* Dr. Appenfeldt reviewed Ms. Zaleski's diagnosis of depressive disorder and post-traumatic stress disorder but found that "the diagnostic criteria [were] not fully met." *Id.* Dr. Appenfeldt diagnosed Plaintiff with bereavement and cannabis abuse and assigned a GAF score of 60, the least severe score indicating moderate symptoms or moderate difficulty in functioning. *Id.*

On March 21, 2008, state agency mental health professional Dr. Carol Deatrick completed a psychiatric review technique form agreeing with Dr. Appenfeldt's diagnosis (Tr.

314-27). Dr. Deatrick noted that "[o]verall, [Plaintiff] appears to be able to function on a daily basis in spite of his emotional [symptoms]" (Tr. 326).

During a medication management appointment with Ms. Clark on April 22, 2008, Plaintiff stated: "I know that the [medicine is] working now" (Tr. 339). Plaintiff indicated that his paranoia had decreased, his decision-making had improved, he felt "calmness with these [medications]" and he could "think clear[ly]." *Id.* He stated that he was going to find employment within weeks, and he denied using recreational drugs. *Id.* Ms. Clark assigned a GAF score of 58, indicating moderate symptoms or moderate difficulty in functioning. *Id.*

On July 2, 2008, state agency mental health professional Dr. Keith Bauer completed a psychiatric review technique form making findings similar to those of Dr. Deatrick (Tr. 369-82). Dr. Bauer noted that Ms. Clark's records showed "clinical improvement" for Plaintiff (Tr. 381). Dr. Bauer gave "controlling weight" to Dr. Appenfeldt's assessment because she was the "only acceptable medical source to examine" Plaintiff. *Id.*

Plaintiff's attorney requested that Dr. Gerald Hodan, a licensed psychologist, perform a psychological evaluation of Plaintiff on September 8, 2008 (Tr. 392-95). Plaintiff told Dr. Hodan that he could not work as he once did, he could not focus, he had many angry outbursts, and the medication he received at Suncoast was only a "little helpful" (Tr. 392). Plaintiff stated that nightmares prevented him from sleeping, he had a depressed mood, he thought about harming himself, and he had no substance abuse problem (Tr. 393). Dr. Hodan diagnosed Plaintiff with "Bipolar I Disorder, Most Recent Episode Depressed," and "Posttraumatic Stress Disorder, Chronic, Severe" (Tr. 395). Dr. Hodan assigned Plaintiff a GAF score of 50, indicating serious symptoms or serious impairment in functioning. *Id.*;

*see* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000) (score of 41-50 indicates serious symptoms or impairment).

Plaintiff appeared for a medication management appointment with Ms. Clark on September 11, 2008, his first since April 22, 2008 (Tr. 418-19). Ms. Clark noted that Plaintiff had missed "several followup appointments" and that he reported having been in Philadelphia for five weeks "providing assistance to his brother who has been very ill" (Tr. 418). Plaintiff admitted not taking his medication as prescribed; consequently, Ms. Clark indicated that "his moods have not been as good as they were before." *Id.* Plaintiff again denied using recreational drugs. *Id.* Ms. Clark assigned Plaintiff a GAF score of 54, indicating moderate symptoms or moderate difficulty in functioning (Tr. 419).

At Plaintiff's next appointment with Ms. Clark on October 7, 2008, he stated: "I think I am better now" (Tr. 417). Plaintiff was taking his medications, was sleeping well, was able to concentrate, and had a "bright affect" and a "greatly improved," euthymic mood. *Id.* He indicated "a goal to be back to work in 6 months." *Id.*

On December 11, 2008, Plaintiff again met with Ms. Clark and stated: "I'm doing pretty good" (Tr. 411). Plaintiff had just returned from another trip to Philadelphia to assist with his brother's health care. *Id.* Plaintiff reported that his unemployment was stressful because he was "used to work and making money." *Id.* According to Ms. Clark, Plaintiff had a calm mood and euthymic affect, and he again denied using recreational drugs. *Id.* Plaintiff stated that he planned to take his medications as prescribed. *Id.* Ms. Clark assigned Plaintiff a higher GAF score of 58, indicating moderate symptoms or moderate difficulty in functioning. *Id.*

The next clinical progress note from Suncoast is dated July 1, 2009 (Tr. 410). Plaintiff met with Lois Corwin, an advanced registered nurse practitioner, who noted that Plaintiff "seem[ed] to be stable" and "[h]is mood swings appeared to be manageable." *Id.* Plaintiff indicated that he was "doing fairly well on the medication," and he denied using drugs. *Id.* Ms. Corwin assigned Plaintiff a GAF score of 55. *Id.*

The last relevant medical record is Ms. Corwin's clinical progress note dated September 2, 2009 (Tr. 433-34). Ms. Corwin reported that Plaintiff "ha[d] not had any increase in mood swings or irritability," he felt "much calmer," he was "able to deal with stressful situations more constructively," and he denied using drugs (Tr. 433). Ms. Corwin assessed the same GAF score of 55. *Id.*

## V. Analysis

Plaintiff presents four closely related issues in his appeal. Plaintiff contends that the ALJ improperly evaluated (1) Plaintiff's mental impairments (Doc. #17 at 7-10); (2) the medical opinions (Doc. #17 at 10-14); (3) Plaintiff's credibility (Doc. #17 at 14-15); and (4) whether Plaintiff's impairments met or medically equaled a listed impairment (Doc. #17 at 15-16). The Court will address each argument in turn.

### A. Evaluation of Mental Impairments

Plaintiff begins by challenging the ALJ's evaluation of Plaintiff's mental impairments at step two of the disability evaluation process. Plaintiff argues that the ALJ should have found that Plaintiff had the severe impairments of bipolar disorder and post-traumatic stress disorder ("PTSD") rather than bereavement. Plaintiff cites his continued grief over the losses of his son and granddaughter after more than a decade, as well as his downward

career progression from social worker to machine operator, and then to cook and construction laborer, and finally to unemployment (Doc. #17 at 7-10).

At step two of the five-step evaluation process, the ALJ is called upon to determine whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. In this circuit, an impairment is not severe if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. *McDaniel v. Bowen*, 800 F. 2d 1026, 1031 (11th Cir. 1986). The claimant/plaintiff has the burden of proving that he or she has severe physical or mental impairment(s). *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). "The severity of a medically ascertained impairment must be measured in terms of its effect upon ability to work and not simply in terms of deviation from purely medical standards of bodily perfection or normalty." *Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002) (internal citation omitted). A diagnosis of a medical condition is not determinative of whether that condition constitutes a severe impairment. *Id.* The ALJ is charged with determining the severity of a claimant's impairments. As noted, it is the effect an impairment has on one's ability to work that determines disability within the meaning of the Social Security Act. The effects of an impairment are measured by the limitations to the ability to work. The ALJ must consider a claimant's limitations to the ability to work when assessing the severity of an impairment. *See* 20 C.F.R. §§ 404.1520(c), 404.1521 (limitations from an impairment determine whether it is severe). Further, in determining whether an individual's physical or mental impairments are of sufficient severity to establish disability under the Regulations, the ALJ is required to consider all of the individual's impairments regardless of whether each impairment on its own is found to be

severe. 20 C.F.R. § 404.1523. The Eleventh Circuit has held that where "a claimant has alleged a multitude of impairments, a claim for social security benefits based on disability may lie even though none of the impairments, considered individually, is disabling." *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

In the instant case, the ALJ found Plaintiff had the severe impairment of bereavement (Tr. 25). The ALJ acknowledged that the record showed Plaintiff had several different mental diagnoses, including depressive disorder, not otherwise specified, post-traumatic stress disorder, and bipolar disorder (Tr. 28). However, the ALJ noted these diagnoses were made by individuals who are not acceptable medical sources who can establish whether the Plaintiff has a medically determinable impairment. *Id.*; *see* 20 C.F.R. § 404.1513(a) (acceptable medical sources include licensed physicians; licensed or certified psychologists; licensed optometrists; and qualified speech-language pathologists). The diagnosis of depressive disorder, not otherwise specified, and post-traumatic stress disorder were made by an individual with a Bachelor of Arts degree and a clinical mental health counselor. (Tr. 28). The diagnosis of bipolar disorder was made by an advanced registered nurse practitioner. *Id.* The ALJ stated he gave great weight to the opinion of consultative examiner Dr. Appenfeldt, because she was an acceptable medical source who could establish whether Plaintiff has a medically determinable impairment (Tr. 31). Dr. Appenfeldt found Plaintiff did not meet the diagnostic criteria for PTSD or depressive disorder, and diagnosed Plaintiff with bereavement (Tr. 312). The ALJ noted Dr. Appenfelt's finding was "consistent with the record as a whole, including . . . the loss of the claimant's son and granddaughter, and the treatment notes of Suncoast showing that the claimant denied PTSD memories" (Tr. 31-32). The ALJ stated he gave little weight to the

opinion of consultative examiner Dr. Hodan, who diagnosed Plaintiff with bipolar disorder and PTSD (Tr. 32). Although Dr. Hodan is an acceptable medical source, the ALJ found his opinion conflicted with other information in the record, including the following: (1) Plaintiff reported to Dr. Hodan his medication was a little helpful, while the treatment notes of Suncoast showed Plaintiff reported significant improvement on medication; (2) Plaintiff denied PTSD memories in the treatment notes of Suncoast but reported them to Dr. Hodan; (3) Dr. Hodan noted there were no indications of substance abuse, even though Plaintiff reported cannabis use of once or twice every two weeks to Dr. Appenfeldt (Tr. 29, 32). The ALJ then stated, "[r]egardless of the claimant's diagnosis, the record shows that the claimant is able to perform work within the residual functional capacity assessment . . ." (Tr. 29). The ALJ then continued his discussion with how Plaintiff's mental impairments affected activities of daily living, social functioning, and his ability to maintain concentration, persistence, and pace (Tr. 30).

It is clear to the Court that the ALJ gave adequate consideration to Plaintiff's differing mental diagnoses when determining Plaintiff's severe impairments and Plaintiff's residual functional capacity. Indeed, the ALJ's decision reflects thoughtful and careful consideration of Plaintiff's mental impairments at steps two and three. The ALJ's decision reflects his finding that Plaintiff had severe impairments and that he then proceeded with the other steps of the sequential evaluation process (Tr. 20-22). 20 C.F.R. § 404.1520(a)(4)(ii), (c). A continued analysis in the sequential step evaluation process can infer failure to articulate a finding at an earlier step was harmless error. *Hutchison v. Bowen*, 787 F.2d 1461 (11th Cir. 1986). Moreover, the Eleventh Circuit has stated, "the ALJ could not have committed any error at step two because he found that [the claimant] had a severe impairment or

combination of impairments and moved on to the next step in the evaluation, which is all that is required at step two." *Council v. Comm'r of Soc. Sec.,* 127 Fed. Appx. 473 (Table), No. 04-13128, slip op. at 4 (11th Cir. Dec. 28, 2004)[4]*; see also Jamison v. Bowen,* 814 F.2d 585, 588 (11th Cir. 1987) (stating that the finding of any severe impairment is enough to satisfy the requirement of step two). Here, the ALJ found in Plaintiff's favor at step two. The ALJ discussed in detail Plaintiff's numerous mental diagnoses, found Plaintiff had the severe impairment of bereavement, and then proceeded to assess Plaintiff's residual functional capacity and his ability to return to past relevant work under step four. Accordingly, no error is found with the ALJ's step two determination.

## B. Medical Opinion Evidence

Plaintiff next argues the ALJ should have given greater weight to the opinion of Dr. Hodan, who diagnosed bipolar disorder and post-traumatic stress disorder, rather than the opinion of Dr. Appenfeldt, who diagnosed bereavement and cannabis abuse. Plaintiff claims that Dr. Appenfeldt's diagnosis was inconsistent with the record as a whole because all of the other treating and examining mental health professionals made more severe mental diagnoses and none diagnosed substance abuse. In Plaintiff's view, the ALJ gave improper reasons for rejecting Dr. Hodan's opinion (Doc. #17 at 10-14).

Neither Dr. Appenfeldt or Dr. Hodan is a treating source; both are consulting doctors who conducted a single examination of Plaintiff. Therefore, their opinions are not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(c). The weight afforded a medical source's opinion depends upon the evidence the medical source presents to support his

---

[4] Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other factors. *Id.* The ALJ may reject the opinion of any medical source when it is inconsistent with the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983).

It is clear to the Court that the ALJ evaluated the evidence from Dr. Appenfeldt and Dr. Hodan as examining medical sources and weighed the evidence in accordance with the requirements of the Regulations. *See* 20 C.F.R. § 404.1527(d). The ALJ recognized that Plaintiff had received "several different mental diagnoses" and had been prescribed medication (Tr. 28). In considering the diagnoses, the ALJ noted, and Plaintiff does not dispute, that the Suncoast providers who made diagnoses favorable to Plaintiff are not acceptable medical sources pursuant to 20 C.F.R. § 404.1513(a) (Tr. 28). The ALJ then provided at least three reasons to give "little weight" to the opinion of Dr. Hodan (Tr. 29, 32). Pursuant to 20 C.F.R. § 404.1527(c)(4), the ALJ cited numerous inconsistencies between Dr. Hodan's evaluation and the other medical evidence. First, Plaintiff told Dr. Hodan that his medication was a "little helpful," but he repeatedly told his Suncoast providers that his medication made him feel better, improved his mood, allowed him to think clearly, enabled him to concentrate, gave him calmness, and made him sleep well (Tr. 339, 340, 392, 410, 411, 417, 433). As the ALJ noted, Plaintiff's statements at Suncoast indicated "significant improvement on medication" (Tr. 29).[5] When Plaintiff did not take his medication as prescribed, Ms. Clark reported that his mood became worse (Tr. 418).

---

[5] Furthermore, at the time Plaintiff made this statement to Dr. Hodan that his medication was only "a little" helpful, it appears he had not strictly adhered to his medication regime. Three days after his examination with Dr. Hodan, Plaintiff reported to Ms. Clark that he had recently not taken his medication as prescribed (Tr. 418).

Second, although Dr. Hodan diagnosed Plaintiff with post-traumatic stress disorder, Plaintiff had denied such memories to Ms. Clark (Tr. 341). Third, Dr. Hodan indicated that Plaintiff did not report a substance abuse problem, but Plaintiff had told Dr. Appenfeldt that he used cannabis regularly and that it "mellow[ed him] out when [he was] upset" (Tr. 311, 393).

Plaintiff does not dispute the statements he made to any of the mental health professionals, but he contends that the ALJ improperly relied on the identified inconsistencies. Plaintiff claims that the ALJ should not have compared Dr. Hodan's report with the Suncoast records because the Suncoast providers are not acceptable medical sources. However, 20 C.F.R. § 404.1513(d)(1) specifies that the ALJ may consider evidence from "other" medical sources, such as nurse practitioners. Plaintiff thereafter contradicts this argument by urging the Court to focus on the consistency between Dr. Hodan's diagnosis and the Suncoast providers' diagnoses. The Court determines that the ALJ properly focused on the facts reported in the Suncoast records and the diagnoses given in the opinion evidence. Pursuant to 20 C.F.R. § 404.1513(a), only evidence from acceptable medical sources can establish a medically determinable impairment.

Plaintiff contends that the absence of a substance abuse diagnosis in Dr. Hodan's report was consistent with the Suncoast records. Plaintiff characterizes Dr. Appenfeldt's report of Plaintiff's cannabis use as "supposed information" that made Dr. Appenfeldt a "lone wolf" and the "odd one out" (Doc. #17 at 11, 12). However, Plaintiff does not claim that Dr. Appenfeldt's report was false. The ALJ need not disregard information on the basis that it appears in only one medical record. Plaintiff's statement to Dr. Appenfeldt about cannabis use was obviously inconsistent with Plaintiff's denial of ongoing drug use to the other medical providers both before and after Dr. Appenfeldt's examination. Because Dr.

Hodan did not have this information, he did not have a basis on which to diagnose Plaintiff with substance abuse. Dr. Hodan also did not indicate that he was able to review any of the Suncoast records. The ALJ properly gave "great weight" to Dr. Appenfeldt's opinion because it was "consistent with the record as a whole, including [Plaintiff's] reported history of cannabis abuse," which Plaintiff has not denied (Tr. 31).

Accordingly, the undersigned finds the ALJ did not err in his evaluation of the opinion evidence from the non-treating, examining sources. Substantial evidence supports the ALJ's determination to give little weight to the opinion of consultative examiner Dr. Hodan.

## C. Plaintiff's Credibility

Plaintiff next challenges the ALJ's finding that Plaintiff's statements regarding his symptoms "are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment" (Tr. 28). In performing the credibility assessment, the ALJ first determines whether the claimant suffers from an underlying medical impairment that could reasonably be expected to cause the alleged symptoms. 20 C.F.R. § 404.1529(b). If so, the ALJ considers the objective medical evidence and other evidence of symptoms, including (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; (5) treatment to relieve the symptoms, other than medication; (6) any measures the claimant has used to relieve the symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions relating to the symptoms. 20 C.F.R. § 404.1529(c)(3).

The ALJ must evaluate the claimant's statements about the intensity, persistence, and limiting effects of his symptoms in light of the objective medical evidence and any other

evidence. 20 C.F.R. § 404.1529(c)(4). The ALJ must consider whether there are any inconsistencies within the claimant's statements or conflicts between the claimant's statements and the evidence. *Id.* When the claimant's statements are internally consistent and consistent with the evidence, there is a strong indication that the claimant is credible. Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *5-*6. The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at *4.

Plaintiff makes minimal argument regarding his credibility, focusing instead once again on Dr. Appenfeldt's opinion (Doc. #17 at 14-15). As the Court's review of the evidence has already shown, the ALJ provided several reasons supporting the finding that Plaintiff was only "partially credible" (Tr. 31). Plaintiff described the effect of his medications differently to Dr. Hodan than to the Suncoast providers, and Plaintiff admitted ongoing substance abuse to Dr. Appenfeldt while denying it to Dr. Hodan and the Suncoast providers. Furthermore, during the time Plaintiff claims to have been unable to work, he repeatedly indicated that wanted to find a job (Tr. 339, 340, 417). When the ALJ provides at least three reasons for discrediting a plaintiff's subjective complaints of pain, a court may find that the ALJ properly discredited the subjective pain testimony. *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989). In the instant case, the Court concludes that the ALJ's findings were supported by substantial evidence.

**D. Listing 12.04**

As a result of the ALJ's alleged errors in identifying the correct severe impairments and considering the opinions of Dr. Hodan and Dr. Appenfeldt, Plaintiff finally contends that the ALJ improperly determined that Plaintiff's impairments did not meet or medically equal a listed impairment, specifically Listing 12.04 (Affective Disorders). Plaintiff again cites his work history as evidence of marked functional limitations and three episodes of decompensation (Doc. #17 at 15). Plaintiff argues the ALJ did not properly evaluate whether Plaintiff met Listing 12.04 "because of the improper diagnosis," presumably the ALJ's finding that Plaintiff had the severe impairment of bereavement as opposed to PTSD or bipolar disorder. *Id.*

Listing 12.04 is entitled "Affective Disorders" and is characterized "by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." Further, "The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.

In order to satisfy paragraph B criteria, a claimant must demonstrate that his condition results in at least two of the following: marked restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(B).

Paragraph C criteria is defined as: "Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal

limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support."  Additionally, there must be one of the following:

> (1) Repeated episodes of decompensation, each of extended duration; or (2) A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or (3) Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(C).

In the instant case, the ALJ found Plaintiff's "mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.09" (Tr. 26).  The ALJ stated, in making this finding, he considered whether the paragraph B and paragraph C criteria were satisfied and determined they were not.  *Id.*

The ALJ found Plaintiff had no restrictions of activities of daily living because he lived alone in an apartment, and reported to Dr. Appendfeldt that he does his own laundry, prepares meals, grocery shops, reads the Bible, and care for his sick brother for five weeks (Tr. 30).

The ALJ found Plaintiff had only moderate limitations in social functioning.  *Id.* Although Plaintiff reported having outbursts with family and coworkers, he responded positively to an anger management group discussion (Tr. 30, 312, 345).  Plaintiff also reported maintaining a good relationship with his daughter, attending bible study and church, and being able to travel to Philadelphia twice to assist with his brother's health care (Tr. 30, 358, 411, 418).

The ALJ found that Dr. Appenfeldt, Dr. Hodan, and the Suncoast providers all reported information indicating that Plaintiff had only mild difficulty maintaining concentration, persistence, and pace (Tr. 30).  Specifically, the ALJ noted treatment notes from Suncoast showed Plaintiff had good memory recall for short and long-term events; he was able to concentrate without distraction; his thought content was logical and goal oriented, despite some circumstantiality and mild blocking at times.  *Id.*  Dr. Appenfeldt reported Plaintiff had sustained normal concentration, persistence, understanding and memory during her examination.  *Id.*  Dr. Hodan reported Plaintiff was able to calculate by serial threes backwards from 100, solve various arithmetic problems correctly, repeat five random numbers forwards and four random numbers backwards, but was unable to remember any of three unrelated words after a delay in time.  *Id.*  Additionally, Ms. Clark found Plaintiff was able to complete serial sevens and give three out of three memory words within the time frame allotted.  *Id.*

Finally, the ALJ found the record lacked evidence that Plaintiff had experienced any episodes of decompensation of extended duration (Tr. 26).

Plaintiff argues the record does contain three episodes of decompensation, specifically: (1) he lost his job with the YWCA because of his mental impairment; (2) he tried to work as a cook but was fired from the job because of his mental illness; and (3) he then tried to work as a construction laborer but lost that job because of his mental illness (Doc. #17 at 15).  However, the ALJ noted there were inconsistencies in the record regarding Plaintiff's job history (Tr. 31).  Conflicts in the evidence are to be resolved by the ALJ, who is entitled to weigh the evidence and come to his own conclusion.  *Clifton v. Astrue*, No. 11C1141, 2012 WL 2277860, at *14 (N.D. Ill. June 18, 2012) (rejecting claimant's argument

that her loss of three jobs due to difficulty in relations with others constituted episodes of decompensation where the reasons for her leaving the jobs were in dispute and ALJ reached contrary conclusion). Additionally, the ALJ stated he gave some weight to the opinions of the state agency mental health professionals, Dr. Deatrick and Dr. Bauer, who both found Plaintiff had experienced no episodes of decompensation (Tr. 32, 324, 379).

Nonetheless, the undersigned need not determine whether these episodes of job loss satisfy the criteria for multiple episodes of decompensation for an extended duration. Based upon the ALJ's findings with respect to Plaintiff's functional limitations, it is clear that Plaintiff cannot satisfy the paragraph B criteria. Plaintiff had only mild restriction in maintaining concentration, persistence, or pace, and moderate difficulties in maintaining social functioning. Therefore, even if the ALJ found that Plaintiff's job losses constituted repeated episodes of decompensation, Plaintiff would still not be entitled to a finding of disability because paragraph B requires marked findings in two of the four areas. *See Overstreet v. Astrue*, No. 10-cv-656-TLW, 2012 WL 996608, at *9 (N.D. Okla. Mar. 23, 2012) (declining to make a finding as to whether plaintiff's multiple hospitalizations satisfied the criteria for multiple episodes of decompensation for an extended duration because plaintiff had only mild and moderate limitations in the first three areas of functioning and thus could not meet paragraph B criteria).

Contrary to Plaintiff's assertion, the ALJ's opinion reflects a detailed examination of whether Plaintiff met the requirements of Listing 12.04 and his determination was not simply premised on the diagnosis of bereavement. The Court concludes that the ALJ properly considered Plaintiff's functional limitations and determined that Plaintiff's impairments did

not meet or medically equal a listed impairment.  Substantial evidence supports the ALJ's step three determination.

## VI. Conclusion

Upon due consideration, the undersigned finds that the decision of the Commissioner was made according to the proper legal standards and supported by substantial evidence. Thus, the undersigned respectfully **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).  The undersigned further recommends that each party bear its own fees and costs, and the Clerk of the Court be directed to enter judgment consistent with this Report and Recommendation.

**DONE AND ORDERED** at Jacksonville, Florida this 16th day of July, 2012.

THOMAS E. MORRIS
United States Magistrate Judge

Copies to:
Hon. James D. Whittemore
All counsel of record